[No. 8618.   Department One.   May 21, 1910.]

## J. S. EVANS, *Respondent*, v. OREGON & WASHINGTON RAILROAD COMPANY, *Defendant and Respondent*, M. W. DIBBLE *et al.*, *Appellants*.[1]

CONTRACTS—ORAL RESCISSION—CONSIDERATION. Where a subcontractor refused to perform and was about to abandon a written contract, the contract may be orally rescinded, and the principal contractor's oral agreement to pay an additional sum is not without consideration or *nudum pactum*, but an election to make a new contract rather than recover damages.

TRIAL—VERDICT—SPECIAL DAMAGES—INCONSISTENCY—CONTRACTS—CONSIDERATION. In an action by a subcontractor to recover additional compensation promised him after undertaking the work, a special finding by the jury that the consideration for the promise was the fact that the principal contractors were under bond to complete the work within a stated time does not control a general verdict for the plaintiff, where the jury were instructed that they must find some consideration for the promise and that one promise is a good consideration for another; since (1) the consideration for the promise was a legal question for the court, (2) the special finding implies that the minds of the parties met and that mutual promises were made, and (3) the consideration found was sufficient.

[1]Reported in 108 Pac. 1095.

APPEAL—REVIEW—PARTIES ENTITLED. Railroad contractors, upon appeal from a judgment against them in favor of a subcontractor, cannot urge error in the granting of a nonsuit as to the railroad company, joined with them as defendants in the action.

APPEAL—REVIEW—VERDICT. A verdict upon conflicting evidence will not be set aside when supported by sufficient direct and circumstantial evidence.

APPEAL—PRESERVATION OF GROUNDS—ESTOPPEL. Where appellants requested an instruction that a preponderance of the evidence was sufficient, they cannot complain of the failure of the court to instruct that it requires clear, positive, and satisfactory evidence to establish a rescission of a written contract.

Appeal from a judgment of the superior court for Lewis county, Rice, J., entered October 11, 1909, upon the verdict of a jury rendered in favor of the plaintiff, in an action on contract. Affirmed.

*Ellis, Fletcher & Evans*, for appellants, cited: *Price v. Mitchell*, 23 Wash. 742, 63 Pac. 514; *Havana Press Drill Co. v. Ashurst*, 148 Ill. 115, 35 N. E. 873; *King v. Duluth M. & N. R. Co.*, 61 Minn. 482, 63 N. W. 1105; *Esterly Harvesting Machine Co. v. Pringle*, 41 Neb. 265, 59 N. W. 804; *Jones v. Risley*, 91 Tex. 7, 32 S. W. 1027; *Lingenfelder v. Wainwright Brewing Co.*, 103 Mo. 578, 15 S. W. 844; *Widiman v. Brown*, 83 Mich. 241, 47 N. W. 231; *Schuler v. Myton*, 48 Kan. 282, 29 Pac. 163; *Reynolds v. Reynolds*, 55 Ark. 369, 18 S. W. 377.

*L. H. Schellbach* and *Hayden & Langhorne*, for respondent.

Gose, J.—Prior to August 12, 1907, the appellants entered into a contract with the respondent Oregon & Washington Railroad Company, for grading a part of its roadbed in Lewis county. On that date the appellants entered into a written contract with the respondent Evans, by which they sublet to him a portion of the work. The respondent Evans commenced work under his contract, but finding that the compensation agreed upon was inadequate, abandoned the work.

The following day, at the instance of the division engineer of
the railroad company, a Mr. Abbott, Evans and Abbott went
to see the appellant Dibble, and informed him that Evans
was dissatisfied and had quit work.  Evans then complained
of the refusal of the appellants to pay a certain bill, and
further said to them that he did not want to resume work be-
cause he had struck gumbo, and could not make anything.
Abbott insisted that he should go on with the work, and
stated in the presence of the appellant Dibble that, if he
would continue and complete the work, "we will see that the
bills are paid and you get a reasonable wage."  Dibble was
present, but said nothing further than to discuss the bill.
The respondent Evans then resumed and completed the work,
and upon the refusal of the parties to pay a portion of the
bills and his wages, brought this suit against his co-respond-
ent and the appellants to enforce the oral contract.  At the
close of his testimony, a motion for a nonsuit was granted
as to the railroad company and denied as to the appellants.
There was a verdict and judgment in favor of the respondent
Evans against the appellants, and they have appealed.

The first point suggested by the appellants is that the
oral contract, if made, was without consideration and not
enforcible.  It is insisted that neither the promise to do, nor
the doing of that which the promisor is by law or subsisting
contract bound to do, is a sufficient consideration to support
a contract in his favor.  We cannot assent to this view of the
law.  We think the better rule is that, where a party has
breached his contract and refused to perform it, it is optional
with the adverse party to sue him for damages, or waive the
breach, treat the contract as abrogated, and enter into a new
contract with the delinquent party.  It would seem to be
elementary that parties competent to contract can abrogate
or rescind the contract and enter into a new contract touch-
ing the same subject-matter to be performed, in the same or
a different way, upon a different consideration.  In the case
at bar, the appellants had contracted to do certain work, and

it was important to them that the work that Evans had agreed to perform should go forward. When he abandoned the work, they had the election to hold him answerable in damages or to make a new contract with him. They chose the latter course, and cannot now be heard to say that the contract was *nudum pactum*. This view has abundant support in the authorities.

"Where the contractor refuses to perform his contract, and the builder promises to pay him additional compensation in consideration of the continued performance of the contract, the authorities are not in accord on the question whether the promise for additional compensation is supported by sufficient consideration. The prevailing rule seems to be, however, that such a promise is valid as an abandonment ·of the original contract and the creation of a new contract." 30 Am. & Eng. Ency. Law (2d ed.), p. 1197.

"The release of one from the stipulations of the original agreement, is the consideration for the release of the other; and the mutual releases are the consideration for the new contract, and are sufficient to give it full legal effect." *Rollins v. Marsh*, 128 Mass. 116.

In *Rogers v. Rogers & Bro.*, 139 Mass. 440, 1 N. E. 122, it was held that, where one party has agreed to sell, and the other has agreed to buy, certain goods at a stipulated price, and the seller delivers a part of the goods but refuses to deliver the remainder except at an advanced price, the agreement of the purchaser to pay the increased price·is binding upon him upon the delivery of the goods. In *Goebel v. Linn*, 47 Mich. 489, 11 N. W. 284, 41 Am. Rep. 723, in an opinion by Judge Cooley, it was held that, where an ice company had contracted to deliver ice to a brewing company at a given rate, and owing to a shortage in ice, refused to complete the contract unless a higher rate was paid, a note given by the brewing company for the ice at the increased price was based upon a sufficient consideration. In *Foley v. Storrie*, 4 Tex. Civ. App. 377, 23 S. W. 442, the plaintiff had agreed to deliver to defendant one thousand cords of wood at four

dollars per cord. Owing to the advance in wages, the plaintiff found that he could not make a profit on the contract, and so advised the defendant. Thereupon it was agreed that the defendant would pay five dollars per cord. The plaintiff then delivered one hundred cords, and brought suit to recover the price on the new contract. It was held that the new contract was enforcible, and that "the parties had the right to rescind their contract or to modify it by mutual agreement." In *Coyner v. Lynde*, 10 Ind. 282, the defendant agreed with the plaintiff, the original contractor, to complete a portion of his contract for the construction of a part of a line of railroad at the price plaintiff was to receive, and to pay plaintiff a premium for the privilege of the contract. Later the defendant ascertained that the contract price was inadequate, and determined to abandon the work. The plaintiff, to induce the defendant to continue the contract to completion, agreed to release him from the payment of the premium, and the defendant completed the contract. It was held that, when a party abandons his contract, the adverse party has his election to sue or make a new agreement and, if in the new agreement he makes new or additional promises dependent upon the fulfillment of the contract, and the party abandoning the contract in consideration of the new promises completes the work, the promise is binding. In *Munroe v. Perkins*, 9 Pick. 298, 20 Am. Dec. 475, the plaintiff undertook to construct a cartway for the sum of $900. After beginning the work he ascertained that the price was inadequate, and determined to abandon the contract. Whereupon, the defendant orally agreed to release him from the contract and pay him by the day, if he would complete the work, which he did; and in an action to recover upon the second contract, it was held binding. The same principle is announced in *Cooke v. Murphy*, 70 Ill. 96; *Abbott v. Doane*, 163 Mass. 433, 40 N. E. 197, 47 Am. St. 465, 34 L. R. A. 33, and *Wilhelm v. Voss*, 118 Mich. 106, 76 N. W. 308.

The rule contended for by the appellants was criticized by this court in *Brown v. Kern*, 21 Wash. 211, 57 Pac. 798, the court saying that it was not in accord with ethics, and ought not to be in accord with the law, to allow a creditor to compromise a debt for a less sum than the amount due, receive a sum of money on the compromise, and then permit him to repudiate the compromise and retain the benefits. We think the view we have expressed is supported by the reasoning of this court in *Sherman v. Sweeny*, 29 Wash. 321, 69 Pac. 1117. It must be conceded, however, that the courts are not agreed upon this question, and that judges of the highest ability have announced the view urged by the appellants. The view we have taken will permit greater freedom in contracting, and is, we think, more in harmony with the fundamental conception of contracts.

The court instructed the jury that they must find "that there was some consideration for the contract," and that "one promise is a good consideration for another promise." The respondent Evans did not except to this view of the law. The following interrogatory was propounded to the jury:

"If you find from the evidence that there was an oral agreement entered into between the railroad company and Dibble-Hawthorne company and the plaintiff, wherein the said defendants agreed to pay the plaintiff all past bills incurred, all future bills to be incurred in the prosecution of the work, and a reasonable wage to himself, state what the consideration for such promise was to the defendants Dibble and Hawthorne."

The jury answered:

"The fact that Dibble and Hawthorne were under bond to complete the work within a stated time."

The appellants insist that the answer is in conflict with the instructions of the court, and that their motion for a judgment notwithstanding the verdict should have been granted. The contention is untenable, for three reasons: (1) If the parties made an oral contract, the sufficiency of

the consideration was a legal question for the determination of the court, and not a fact for the consideration of the jury; (2) the answer to the interrogatory necessarily implied that the minds of the parties met and that the oral contract was made, thus falling within the instruction that "one promise is a good consideration for another;" and (3) the consideration found was a sufficient consideration and within the evidence.

It is insisted that the court erred in submitting the case to the jury as to the appellants, and withdrawing it as to the railroad company, and that there is not sufficient evidence of the oral contract to support the verdict. The respondent is not complaining of the action of the court in granting the nonsuit in favor of the railroad company. Obviously he is the only party injured thereby. In addition to the facts stated, there was evidence tending to show that, after making the alleged oral contract, the appellants kept the time of the men employed by Evans; that they did not do so before that time, and that they thereafter paid five bills for supplies, such as milk, hay, meat, and powder, which Evans had contracted in the prosecution of the work, aggregating over $500. They were not required to pay these bills, under the written contract. The appellants stoutly denied making the oral contract, but admitted paying the bills mentioned, explaining that they did so, not as a duty, but at the request of Evans, when there was money due him. There is sufficient evidence, direct and circumstantial, to support the verdict. On the other hand, the jury might properly have found for the appellants. The issue was sharply drawn, and was determined adversely to the appellants upon sufficient evidence, and they must abide the result.

The authorities cited in the reply brief, holding that it requires clear, positive, and convincing evidence to establish the rescission of a written contract, have no application here, the court, at the instance of the appellants, having instructed

that a preponderance of evidence was sufficient to establish that fact.

The judgment is affirmed.

RUDKIN, C. J., FULLERTON, CHADWICK, and MORRIS, JJ., concur.